OPINION
{¶ 1} Timothy Green appeals from his conviction and sentence in Vandalia Municipal Court on one count of sexual imposition, a third-degree misdemeanor. In his sole assignment of error, Green contends his conviction is against the manifest weight of the evidence.
 {¶ 2} The present appeal stems from an encounter between Green and his thirteen-year-old step-daughter, J.O., one night in May 2004. At trial, J.O. testified that she was babysitting her step-brother, step-sister, and cousin while Green and J.O.'s mother, Georgia, went to a bar with friends. Sometime that evening, J.O. fell asleep in the same bed with her step-sister and cousin. She wore a sleep mask to shield her eyes from a nightlight.
 {¶ 3} J.O. testified that she awoke later that night and felt a hand "down [her] pants" between her legs. The hand was inside her pajamas but outside her underwear. J.O. stated that she removed her eye cover and saw Green "jump back" from the bed, turn around, and walk quickly out the bedroom door. Shortly thereafter, J.O. arose and went into the kitchen where she saw her mother playing cards with Green and three other people. J.O. stood silently for a few seconds because she was too scared to speak. She then went into a bathroom and cried before returning to bed. J.O. reported the incident to her mother the next morning. According to J.O., she initially spoke to her mother on the patio and reported that Green had "molested" her. J.O. and her mother then went for a drive, and J.O. went into more detail about the touching.
 {¶ 4} J.O.'s testimony was corroborated to some extent by Toby Foster, who is married to J.O.'s aunt, Melissa.[1]
Foster, who considers himself a good friend of Green, testified that he and his wife were part of the group that went out drinking on the night in question. He recalled returning to Green's home around midnight and playing cards at the kitchen table. Foster also remembered Green leaving the table to use the restroom at one point. He testified that shortly after Green's return to the card table J.O. appeared. He then heard J.O.'s mother, Georgia, ask her three times what was wrong. Foster stated that J.O. made no response before turning and walking away.
 {¶ 5} Foster and his wife stayed at the Green residence that night, and he saw J.O. again the following morning while making breakfast. Foster testified that J.O. was sitting alone on a couch with a "dazed" look. She did not respond to his attempts at conversation. Foster's impression was that J.O. appeared to be upset about something. He then saw J.O. start crying before leaving the house with her mother.
 {¶ 6} The State's final witness was Clayton police officer Mark Gau, who testified about taking a statement from J.O. after she arrived at the police station with her biological father. On direct examination, Gau addressed a notation in his police report about the cover being raised during the touching incident. Gau explained that he had assumed J.O.'s "cover" reference pertained to the moving of blankets. He acknowledged, however, that J.O. may have been referring to the eye cover that she used.[2]
On cross examination, Gau testified that J.O. told him she had been wearing "pajama pants" on the night in question. He also stated that J.O. did not mention seeing Green "jump back" from the bed. Instead, she told him that she had seen Green near the bed walking toward the door after the touching incident. According to Gau, J.O. also recalled speaking to Green about her step-sister before he left the bedroom.
 {¶ 7} For his part, Green presented testimony from his wife Georgia. She confirmed that J.O. had appeared in the kitchen during the card game. She also recalled J.O.'s lack of response to her inquiries about what was wrong before returning to bed. According to Georgia, J.O. was wearing full-length pajama pants. Georgia testified that she saw J.O. crying the following morning and took her for a drive to talk. She stated that J.O. denied being touched inappropriately but did accuse Green of "flipping" the top of her pants before running from the room. Georgia testified that J.O. changed her story about a week later, after spending time with her biological father, and accused Green of touching her.
 {¶ 8} The final witness at trial was Green. He admitted passing the door of the bedroom in which J.O. slept to use the restroom while playing cards. He denied, however, that he had entered the bedroom or touched J.O. He added that his relationship with J.O. was not particularly good and suggested that she disliked him because he disciplined her.
 {¶ 9} After considering all of the evidence, the trial court filed a decision and entry finding Green guilty of sexual imposition. Therein, the trial court found the testimony of J.O. and Foster to be credible. As for the testimony presented by Georgia and the appellant, the trial court stated: "It was obvious that Mrs. Green still had feelings toward the Defendant and simply did not want to believe that the events occurred. Because she was obviously biased the Court finds her testimony not credible. The Court further finds the Defendant's testimony not credible."
 {¶ 10} Green's sole contention on appeal is that his conviction is against the manifest weight of the evidence. In support, he challenges the credibility of J.O.'s claim that he touched her inside her pajamas. Specifically, he relies on the following facts and arguments to attack the believability of this allegation: (1) J.O. admittedly disliked him, (2) J.O. had been asleep when the touching began and may have imagined it, (3) it is implausible that he would have committed such a "brazen" act in the middle of a social gathering, (4) J.O.'s mother, Georgia, does not believe her allegation, and the State failed to call J.O.'s biological father to testify, (5) the State failed to present testimony from any expert witness on child molestation, (6) J.O., who usually resided with her biological father, called her mother and insisted on visiting the Green residence just one week after the touching incident, and (7) J.O. testified that she was wearing pajama shorts on the night in question whereas other witnesses testified that she was wearing full-length pajama pants.
 {¶ 11} Upon review, we find Green's manifest-weight argument to be unpersuasive. When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 12} Here we cannot say that the evidence weighs heavily against Green's conviction. Although Green raises a number of issues to challenge the believability of J.O.'s accusation, the record persuades us that the trial court did not lose its way in assessing the relative credibility of the witnesses. With regard to the specific issues raised in Green's appellate brief, we make the following observations:
 {¶ 13} First, notwithstanding Green's claim that J.O. disliked him, it does not follow that she necessarily fabricated her allegation of inappropriate touching. Although the quality of the relationship between Green and J.O. was a relevant issue, the record does not reveal any severe animosity between the two.
 {¶ 14} Second, J.O. may have been asleep when the touching began but she testified that she awoke during the incident, removed her mask, and saw Green flee her room. J.O. testified that she was sure she did not imagine the incident in a dream. In our view, the trial court reasonably found this testimony to be credible. Therefore, we find no merit in Green's claim that J.O. may have imagined the touching.
 {¶ 15} Third, contrary to his argument on appeal, Green did not engage in inappropriate touching in the middle of a social gathering. Rather, the incident occurred in a bedroom with a victim who appeared to be asleep after Green had excused himself to use the restroom. We note too that Green's consumption of alcohol at the bar may have emboldened him and lowered his inhibitions.[3]
 {¶ 16} Fourth, the fact that J.O.'s mother, Georgia, disbelieved the accusation is not particularly significant given that the trial court found Georgia's own testimony to be lacking in credibility and biased in favor of Green, her husband. Moreover, we are not persuaded that the lack of testimony from J.O.'s biological father bolsters Green's manifest-weight argument. The issue before us is whether Green's conviction is against the manifest weight of the evidence that the State did present. The issue is not whether the State could have presented more evidence.
 {¶ 17} Fifth, for the same reason, the absence of testimony from an expert on child molestation does not diminish the weight of the evidence presented by the State. Moreover, Green fails to explain how the existence of such an expert would have assisted the trier of fact in this case.
 {¶ 18} Sixth, Georgia's testimony that J.O. insisted on visiting the Green residence the next weekend after the touching incident undoubtedly weighs in Green's favor. One problem with this evidence, however, is that J.O. disputed it. In her own testimony, J.O. denied returning to spend the weekend with her mother and Green after the inappropriate touching at issue. As noted above, the trial court found J.O.'s testimony to be credible and disbelieved the testimony presented by Georgia.
 {¶ 19} Seventh, we see little significance in the controversy about whether J.O. was wearing pajama shorts or full-length pajamas. Green contends it would have been difficult for him to reach inside the waist of J.O.'s pajamas to put his hand between her legs. Thus, he argues, for her story to be true, he must have reached up the leg of her pajamas — an act that would have been nearly impossible if she were wearing full-length pajamas as opposed to pajama shorts. Green's argument has some appeal only if we assume that he reached up the leg of J.O.'s pajamas to touch her. But we see no basis for indulging in such an assumption. On the record before us, we discern no reason why Green could not have reached inside the waist of J.O.'s pajamas to touch her. If he proceeded in this manner, the length of J.O.'s pajamas is irrelevant.[4]
 {¶ 20} Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Green's conviction. Accordingly, we overrule his assignment of error and affirm the judgment of the Vandalia Municipal Court.
Judgment affirmed.
Fain, J., and Donovan, J., concur.
[1] Although Green has not raised the issue, we note that Foster's testimony satisfies the corroboration requirement imposed by R.C. 2907.06(B). See State v. Economo (1996),76 Ohio St.3d 56 (recognizing that slight evidence tending to support the victim's testimony is enough to satisfy the statute).
[2] The significance of this point appears to stem from J.O.'s denial at trial that she had been sleeping under any bed covers.
[3] Toby Foster testified that Green was "tipsy" and would have been unable to drive safely upon leaving the bar that night.
[4] In any event, only Green and his wife, Georgia, testified with certainty that J.O. was wearing full-length pajamas on the night in question. For her part, J.O. testified that she was wearing pajama shorts. Toby Foster testified that he could not be sure about the length of the pajamas, and officer Mark Gau testified that J.O. recalled wearing "pajama pants" but she did not specify the length of the pants. Given that shorts might be considered a type of "pants," particularly by a thirteen-year-old, the record fails to establish that J.O. was wearing full-length pajamas. As noted above, however, even if she was wearing full-length pajamas, we are unpersuaded by Green's claim that it would have been impractical for him to reach inside the waist band to touch her.